**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Dominic Eric Lee and Vicki Lee,    )    No. CV 06-0449-PCT-JAT
                                   )
                Plaintiffs,        )    **ORDER**
                                   )
vs.                                )
                                   )
                                   )
Bill Fessler, et al.,              )
                                   )
                Defendants.        )
                                   )
_____   )

Plaintiffs Eric and Vicki Lee claim that four Prescott Valley police officers and the Town of Prescott Valley ("Defendants") violated their civil rights under 42 U.S.C. § 1983. Specifically, Plaintiffs contend that Defendants deprived them of their right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures of their persons. Defendants move for summary judgment on all claims. Because the Court concludes that Plaintiffs have failed to show that Defendants violated any of their constitutional rights, the Court will grant this motion.

**I.    Background**

Eric Lee and Vicki Lee are husband and wife. At the time of the underlying events in this case, Eric and Vicki lived at 9560 East Lakeshore Drive in Prescott Valley, Arizona.

On February 13, 2004, the Prescott Valley Police Department received a telephone call from a crisis-hotline volunteer at a woman's shelter in Flagstaff, Arizona. The volunteer informed the police that she had just received a call from an unidentified woman in California who claimed that "her friend . . . Eric Lee . . . has a gun and he's been threatening

1   to take his own life because evidently he's fighting with his wife at the moment and

2   threatening her." [Defs.' Statement of Facts ("SOF") ¶ 7.] The volunteer reported Eric Lee's

3   address as 9650, not 9560, East Lakeshore Drive.

4          The Prescott Valley Police Department responded by issuing a "hot-tone" call of a

5   domestic violence situation and a possible suicide in progress at the address provided by the

6   volunteer.  A "hot-tone" call is issued when a crime that threatens the safety, health, or

7   welfare of another person is believed to be in progress.  The dispatcher warned that the man

8   involved was reportedly armed with a gun.

9          Four police officers responded to the call: Art Askew, Shawn Caswell, Bill Fessler,

10  and Tom Grant.  Of the four, Fessler was the only one not wearing a standard police uniform.

11  He was dressed in a white long-sleeve dress shirt, slacks, and a black bullet-proof vest.  On

12  the front of the vest was the word "POLICE" and a patch of a police badge.  Fessler's actual

13  police badge was attached to his belt in an open and obvious fashion.

14         After the officers arrived at the address provided by the hotline volunteer, they

15  discovered that they had been given the wrong address, determined where the Lees actually

16  lived, and then proceeded to the correct address.  Upon their arrival, they could hear a loud

17  argument taking place inside the residence,[1] prompting the officers to take up various

18  positions around the outside of the residence.  Grant covered the rear of the residence.

19  Caswell positioned himself behind a post at the front of the residence.  Askew placed himself

20  to the side of the front door, out of the view of anyone who happened to open the door.  And

21  Fessler stood in plain view on the front doorstep.  With his weapon drawn and pointed at the

22  ground, Fessler then knocked on the door.

23         The details of what happened next are largely in dispute.  Because the Court must

24  construe all disputed facts in the light most favorable to the nonmoving party, *Ellison v.*

25  *Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004), the Court will only relate the Lees' version

26  _____

27         [1] The volume of the argument was such that both Eric and Vicki later admitted that
    they were not surprised when the police knocked on their door. [Defs.' SOF Ex. C at 78, Ex.
28  D at 33.]

of the disputed facts, along with those facts that are undisputed.

After the knock, Eric Lee opened the door with a sandwich in his right hand and his left hand on the doorknob.  Fessler ordered him to step out of the house.  Instead of complying with the order, Mr. Lee responded, "Who are you?"  Immediately thereafter, Askew reached around the side of the door, grabbed Eric, took him to the ground using an arm-bar technique, and then, with Fessler's help, handcuffed him.  Only then, after Eric was lying prostrate on the ground in handcuffs, did the men announce that they were police officers.

While handcuffed on the ground, Eric moved his knee underneath him and shifted to the right to try to get his chest off the ground.  This movement prompted one of the officers to twist his arm and command him to stop moving, which caused what Eric describes as excruciating pain.  Meanwhile, Vicki had appeared in the doorway, and Caswell had pointed an assault rifle at her and ordered her not to move.  However, neither he nor any of the other officers ever physically touched Vicki at any point during their encounter with the Lees.[2]  Shortly thereafter, the Lees were brought inside the residence and placed in different rooms for questioning.  The officers completed their investigation at the residence and concluded that Mr. Lee "was not a threat to himself or others at that time."  Mr. Lee was released at his home and no charges were filed.

On February 10, 2006, the Lees filed a complaint alleging two causes of action under 42 U.S.C. § 1983.  The first cause of action was asserted against the four individual police officers and alleged that the officers violated their civil rights under the United States Constitution.  The second cause of action was asserted against the Town of Prescott Valley.  This claim alleged that the failure of the municipality to enact certain policies and to

---

[2]  In their statement of facts in support of their response to the motion for summary judgment, Eric and Vicki purport to dispute the contention that Vicki was never physically touched.  [See Doc. # 35 at 1, ¶ 2.]  But they do so on their lawyer's say-so alone, failing to point to any evidence in the record to contradict the Defendants' evidence.  Bare assertions cannot create disputed issues of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

1  adequately train and supervise its police officers caused the Lees to suffer constitutional
2  injury.  Defendants now move for summary judgment on each cause of action set forth in the
3  complaint.

4  **II.      Legal Standard**

5  Summary judgment is appropriate when "the pleadings, the discovery and disclosure
6  materials on file, and any affidavits show that there is no genuine issue as to any material fact
7  and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A
8  dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return
9  a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
10  (1986).  The nonmovant's bare assertions, standing alone, are insufficient to create a material
11  issue of fact and defeat a motion for summary judgment.  *Id.* at 247-48.  The Court, however,
12  construes all disputed facts in the light most favorable to the nonmoving party.  *Ellison v.*
13  *Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

14  **III.     Discussion**

15  *A. Section 1983 Claim Against the Individual Officers*

16  To establish a § 1983 claim against a police officer in his individual capacity, a
17  plaintiff must prove (1) that the officer acted "under color of state law" and (2) that the
18  officer's actions deprived the plaintiff of a right secured by the United States Constitution.
19  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Defendants contend that the officers'
20  actions did not violate the Lees' constitutional rights and that, even if they did, the officers
21  are entitled to qualified immunity.  The Court concludes that the Lees have failed to show
22  the officers violated a constitutional right, and thus will not proceed to the immunity inquiry.[3]

23  1. The Specific Constitutional Right at Issue

24  In their motion for summary judgment, Defendants characterize the Lees' § 1983
25  claim against the officers as proceeding on a Fourth Amendment excessive-force theory

26

27  _____
28  [3] *Saucier v. Katz*, 533 U.S. 194, 201 (2001), requires district courts to address the
   merits of the constitutional inquiry before proceeding to the immunity inquiry.

1    alone.  In their Response to Defendants' motion, the Lees do not dispute this characterization.

2    Nor do they set forth any legal framework or make any legal argument suggesting that their

3    cause of action against the officers is proceeding on any theory other than excessive force.

4    Instead the Lees set forth the general rule of reasonableness that governs seizures under the

5    Fourth Amendment, specifically note that the use of excessive force constitutes an

6    unreasonable seizure as a matter of law, and then—after reviewing their version of the

7    pertinent facts in this case—conclude that the officers' "use of physical force to violently

8    throw [Eric Lee] to the ground, place him in an 'arm bar,' handcuff him and then violently

9    restrain him was <u>not reasonable</u>."  [Pls.' Response at 11-12.]

10         In light of the Lees' failure to quarrel with Defendants' characterization of their claim,

11   the Court concludes that the Lees have embraced excessive force as their sole theory of

12   liability and have abandoned all other theories they might have pursued.  To hold otherwise

13   would require this Court to forsake its role as neutral arbiter of the parties' dispute and

14   instead serve as an advocate for the Lees, "manufactur[ing] arguments" on their behalf.

15   *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).  In our adversarial

16   system of justice, courts are not at liberty to serve in such a capacity.  *Bias v. Moynihan*, 508

17   F.3d 1212, 1219 (9th Cir. 2007) ("A district court lacks the power to act as a party's lawyer,

18   even for *pro se* litigants."); *see also Indep. Towers of Wash.*, 350 F.3d at 929 ("Our

19   adversarial system relies on the advocates to inform the discussion and raise the issues to the

20   court.").

21                    2.  The Officers Used Reasonable Force

22         A police officer's use of force violates the Fourth Amendment if it does not comport

23   with the reasonableness standard set forth in *Graham v. Connor*, 490 U.S. 386, 397 (1989).[4]

24   _____

25        [4]  The Lees dedicate a considerable amount of space in their Response to discussing
     the policies of the Prescott Valley Police Department that were allegedly violated by the
26   officers.  Although these policies were most certainly adopted as measures intended to
     prevent constitutional violations, the policies themselves are not synonymous with the
27   Constitution and its requirements, and thus are irrelevant to the issue of whether the officers,
     under the facts and circumstances of this case, used excessive force within the meaning of

28

Under *Graham*, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396-97 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Factors a court must consider in deciding whether the force used was reasonable include "the severity of the crime at issue" and "whether the suspect poses an immediate threat to the safety of the officers or others." *Id.* at 396.

Under the facts and circumstances confronting the officers in this case, the force used to detain the Lees was reasonable. First, with regard to Eric, the officers had been told that they were dealing with a suspect who was armed with a gun, threatening suicide, and fighting with his wife. When they arrived at the Lees' address, the officers could hear a loud verbal altercation taking place between a man and a woman inside the residence, thus corroborating the information they had received from police dispatch. At that point, a reasonable officer on the scene would believe that his own life and the lives of the suspect and his wife were immediately threatened by the armed and suicidal suspect. Believing this, it would be reasonable for the officers to feel the need to neutralize the suspect at the first sign of possible trouble, for their own safety as well as the safety of others. Eric's failure to immediately comply with Fessler's order to step out of the house provided that sign of trouble. While it is regrettable that the actions of Fessler and Askew apparently aggravated an old shoulder injury of Eric's, the manner in which Eric alleges he was taken to the ground, handcuffed, and made to lie still was reasonable under the circumstances. These are just the

the Constitution. *See Thompson v. City of Chicago*, 472 F.3d 444, 453-54 (7th Cir. 2006).

- 6 -

sorts of pushes and shoves the Fourth Amendment makes allowance for when a police officer reasonably believes he is dealing with an armed and dangerous suspect. Compare *United States v. Hensley*, 469 U.S. 221, 235 (1985) (stating that investigating officers are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a] stop"); *Gallegos v. City of Los Angeles*, 308 F.3d 987 (9th Cir. 2002) (removing burglary suspect from car at gunpoint held to be reasonable); *Alexander v. County of Los Angeles*, 64 F.3d 1315 (9th Cir. 1995) ("It is well settled that when an officer reasonably believes force is necessary to protect his own safety or the safety of the public, measures used to restrain individuals, such as stopping them at gunpoint and handcuffing them, are reasonable.").

Second, with regard to Vicki, none of the police officers ever physically touched her. Vicki seems to complain about the fact that Caswell pointed an assault rifle at her and ordered her not to move. Under the circumstances, Caswell's show of force was reasonable. The officers were securing a scene where they reasonably believed at least one man was armed and threatening to take his own life and perhaps the life of another. Until the scene was secured, they could not be certain that Vicki did not pose a threat.

The Lees attempt to avoid the conclusion the Court reaches here by arguing that the use of force is per se unreasonable if a police officer fails to verbally identify himself as a police officer before using force. This argument has no merit. First of all, the Lees fail to cite any legal authority to support this proposition. And second, inasmuch as the argument is premised on the knock-and-announce principle that informs the reasonableness of an officer's method of entry into a dwelling, the Supreme Court has explicitly held that "[t]he Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995). At most then, a police officer's failure to immediately announce that he is a police officer is subsumed in the totality of the circumstances from which the reasonableness of the officer's actions is judged. And under the circumstances of this case, as discussed above, and especially in light of the safety

1    concerns and the fact that Eric Lee opened the door to a man whose attire prominently

2    identified him as a police officer,[5] a reasonable jury could not find that the defendant

3    officers' failure to verbally announce themselves as police officers before using force

4    rendered their actions unreasonable.

5        In sum, the Lees have failed to show that a reasonable jury could find the police

6    officers used excessive force in violation of the Fourth Amendment. And the Lees have not

7    argued that the officers violated their constitutional rights in any other way. Accordingly,

8    the Lees' § 1983 claim against the officers fails as a matter of law.

9        *B.  Section 1983 Claim Against the Town of Prescott Valley*

10       The parties agree that the Lees' § 1983 claim against the Town of Prescott Valley

11   relates to a police department regulation.[6] To establish municipality liability under § 1983

12   on the basis of a complained-of policy, a plaintiff must prove that his constitutional rights

13   were violated by the execution of the municipality's policy. *Monell v. Dep't of Soc. Servs.*,

14   436 U.S. 658, 694 (1978). Because the Court has already determined that the Lees have

15   failed to show that the police officers deprived them of a constitutional right, their § 1983

16   claim against the Town of Prescott Valley also fails as a matter of law. *See City of Los*

17   *Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional

18
_____

19       [5] Implicit in the Lees' argument is the claim that Eric did not immediately comply
     with Fessler's command to step out of the house because he did not know Fessler was a
20   police officer. This is hard to believe in light of Eric's admission that he expected the police
     to be at the door when he heard the knock. [Defs.' SOF Ex. C at 78.] But even accepting
21   the allegation as true, it has no bearing on the Court's analysis. Eric's perspective is
     irrelevant. As previously noted, reasonableness "must be judged from the perspective of the
22   reasonable officer on the scene." *Graham*, 490 U.S. at 396.

23
24       [6] In their complaint, the Lees also alleged that the municipality was liable under §
     1983 by failing to properly train the police officers. But in their Response, the Lees
25   abandoned this theory of liability by failing to respond to the arguments addressing this issue
     in Defendants' motion for summary judgment. Instead, the Lees stated, "In this case the
26   Plaintiffs['] claim against the Defendant [C]ity of Prescott Valley . . . arises from the simple
     fact that the Prescott Valley Police failed to carry out its policy regards to [sic] anonymous
27   tips[,] which would have required that the reliability of the information be verified, as
     required by well established Law." [Resp. at 9.]
28

injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.").

Furthermore, even assuming that the Lees had shown the officers deprived them of a constitutional right, their § 1983 claim against the municipality would still fail as a matter of law.  In their Response to Defendants' motion, the Lees stated that their claim against the municipality is premised on "the simple fact that the Prescott Valley Police *failed to carry out* [a certain] policy." [Resp. at 9.] Section 1983 does not impose liability on municipalities for such failures.  *See Monell*, 436 U.S. at 694 (holding that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's official policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.").

**IV.    Conclusion**

The Lees have failed to show that the police officers violated any of their constitutional rights.  Both causes of action under § 1983 therefore fail as a matter of law.  Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. # 28) is **GRANTED**.  The Clerk of the Court shall enter judgment accordingly and close this case.

DATED this 11th day of July, 2008.

_____
James A. Teilborg
United States District Judge